IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAKOTA CLAY AHLGRIM,

       Plaintiff,

v.                                                                    CV 13-229 MCA/WPL

KENNETH SMITH,
*Individual and Official Capacity*,

       Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Dakota Ahlgrim brought this lawsuit pursuant to 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the New Mexico Religious Freedom Restoration Act ("NMRFRA"), alleging violations of his Fourteenth Amendment due process rights and rights under RLUIPA and NMRFRA while incarcerated at the Penitentiary of New Mexico. Kenneth Smith, former Unit Manager and current Restoration into Population Program Coordinator at the Penitentiary of New Mexico, has filed a *Martinez* report, which I construe as a motion for summary judgment. Ahlgrim did not file a response to the report. I recommend that the Court grant summary judgment for Smith, dismissing Ahlgrim's Fourteenth Amendment due process claim without prejudice and his RLUIPA and NMRFRA claims with prejudice.

**FACTUAL AND PROCEDURAL BACKGROUND**

Ahlgrim filed his complaint on March 8, 2013. He alleges that Smith has a history of using his position of authority to deny procedural safeguards and deprive inmates of personal property items, including legal materials and religious items, as punishment and without due process. Ahlgrim claims that on February 6, 2013, Smith forced him into a behavior contract

without due process "as a punishment for a small pattern of minor petty incidents." Pursuant to the behavior contract, Ahlgrim alleges that officers confiscated everything from his cell, leaving him with nothing but one pair of boxers.[1]

Ahlgrim brings three claims deriving from this alleged set of facts. First, he asserts that his Fourteenth Amendment Due Process Clause rights were violated. For support, Ahlgrim claims that Smith and the rest of the unit management team met him in the hallway outside of his cell and that Smith began reading from the behavior contract on which Ahlgrim was to be placed. Ahlgrim complains that he was given no notice and that Smith informed him that he would be placed on the contract regardless of whether he signed the document. Officers then proceeded to confiscate his belongings.

Next, Ahlgrim alleges that Smith violated RLUIPA. As support, Ahlgrim states that Smith had prison officers confiscate his Qur'an, prayer rug, kufi, Islamic rosary, Du'aa books, and Islamic educational and learning material as part of his punishment. Ahlgrim also alleges for identical reasons that Smith violated NMRFRA. He seeks declaratory, injunctive, and monetary relief.

Smith filed his *Martinez* report on January 17, 2014. I ordered Ahlgrim to respond to the report by February 20, 2014. Ahlgrim did not file a response to the report, and I entered an Order to Show Cause on March 10, 2014, providing Ahlgrim until March 24, 2014, to file a response or objections or otherwise show cause why a response or objections had not been filed. Ahlgrim never filed a response or objections. Accordingly, Smith did not file a reply.

---

[1] Pursuant to Ahlgrim's behavior contract, he was placed in "Condition A" for seventy-two hours. (*See* Doc. 24 Ex. A at 4.) An inmate who is placed in Condition A for inappropriate behavior is stripped of most items in his or her cell. (*See* Doc. 24 Ex. E at 106-07.) For seventy-two hours, the inmate is allowed no personal property, including religious items, except for prescription glasses and a wedding ring. After the first seventy-two hours, the inmate may once again take possession of religious items, among other specified personal items. (*Id.* at 83-84.)

## STANDARD OF REVIEW

The Court should grant summary judgment only when the record demonstrates "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.* A mere "scintilla" of evidence is insufficient to successfully oppose a motion for summary judgment. *Id.* at 252. The record and all reasonable inferences therefrom must usually be viewed in the light most favorable to the nonmovant. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). I will therefore view the facts in the light most favorable to Ahlgrim.

For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). A *Martinez* report is also treated as an affidavit and may be construed as a motion for summary judgment. *Id.* at 1109-13; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). A court cannot resolve material disputed factual issues by accepting a *Martinez* report's factual findings when they are in conflict with pleadings or affidavits. *Hall*, 935 F.2d at 1109. However, conclusory allegations without specific supporting facts have no probative value and cannot create a genuine issue of fact. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992).

Because Ahlgrim proceeds *pro se*, I construe his pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City*

*of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall*, 935 F.2d at 1110). Liberal construction requires courts to make some allowance for a *pro se* litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[.]" *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alterations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

## DISCUSSION

Smith brings six different arguments as to Ahlgrim's claims against him. First, he argues that Ahlgrim failed to state a Fourteenth Amendment claim. Second, noting that RLUIPA allows actions against defendants only in their official capacity, he asserts that Ahlgrim failed to allege how any New Mexico Corrections Department ("NMCD") actions or policies prevented Ahlgrim from engaging in religious activity while under the behavior contract. Third, Smith argues with respect to the NMRFRA that the loss of religious items was a "byproduct" of enforcement of the behavior contract rather than a violation of a fundamental tenet of Ahlgrim's religion and that, as under RLUIPA, Ahlgrim failed to allege that the NMCD substantially burdened his practice of religion. Fourth, Smith argues that Ahlgrim's constitutional claims should be dismissed for failure to exhaust administrative remedies under the Prison Litigation Reform Act. Fifth, Smith asserts that he is entitled to qualified immunity as to Ahlgrim's Fourteenth Amendment claim because Ahlgrim failed to allege the violation of clearly established constitutional right. Finally, Smith argues that Ahlgrim's claims should be barred by the doctrine of claim splitting. I address each of Ahlgrim's three claims and apply Smith's pertinent arguments respectively.

I.      **Fourteenth Amendment Due Process Claim**

Before bringing a lawsuit regarding conditions of confinement, an inmate must exhaust all administrative remedies that are available within the facility. *See* 42 U.S.C. 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhausting administrative remedies means that the prisoner completes the grievance process, including pursuing all available administrative appeals, unless all available relief is obtained earlier in the process. *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). A remedy is "available" if it is "capable of use for the accomplishment of a purpose." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) (quoting *Booth v. Churner,* 532 U.S. 731, 737 (2001)).

This requirement serves several purposes. First, it enables prison officials to resolve the complaint without the need for court intervention. *Ross*, 365 F.3d at 1184. Next, it filters out some frivolous claims. *Id.* Finally, it creates an administrative record that aids in the court's review of the case before it. *Id.* However, the benefits of the grievance process can only be realized "if the prison grievance system is given a fair opportunity to consider the grievance." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (quoting *Woodford v. Ngo,* 548 U.S. 81, 93 (2006)). For that reason, inmates must complete the entire review process in accordance with the rules that are defined by the prison grievance process itself. *Id.* (quoting *Jones v. Bock,* 549 U.S. 199, 218 (2007)).

Failure to exhaust administrative remedies is an affirmative defense and not a pleading requirement. *Jones,* 549 U.S. at 212. Consequently, Smith bears the burden of proving that Ahlgrim did not utilize the available administrative remedies. *See Tuckel*, 660 F.3d at 1254. Once Smith satisfies his burden, though, the onus falls to Ahlgrim to specifically show that either

5

he exhausted his administrative remedies or administrative remedies were unavailable for each alleged violation. *See id.*

Here, Smith asserts failure to exhaust as a defense to "all of [Ahlgrim's] constitutional claims"—that is, his Fourteenth Amendment due process claim. The NMCD has a grievance policy in place, involving a three-step process. First, an inmate must file an informal complaint within five calendar days from the date of the incident. (Doc. 24 Ex. F at 9.) If necessary, the second step is to file a formal grievance within twenty calendar days of the date of the incident. (*Id.*) The inmate must place the completed form in a designated Grievance Box or an institutional mailbox, or the inmate may deliver the form to a designated Grievance Officer. (*Id*.) The Grievance Officer checks the Grievance Box daily, except for weekends and holidays (*id.* at 5), and reviews the grievances and submits a report to the Warden within twenty working days of receipt (*id*. at 12). The Warden reviews the report and informs the inmate, in writing, of the decision within fifteen days of receiving the Grievance Officer's report. (*Id*. at 13.) After the Warden makes a decision as to the formal complaint, the inmate may appeal the grievance to the Office of the Secretary of Corrections within seven calendar days. (*Id.* at 13.) The decision of the Secretary is the final decision. (*Id*.) The Grievance Officer must keep records of all grievances filed by the inmates and their disposition. (*Id*. at 14.)

The behavior contract described in the complaint went into effect on February 6, 2013, and was imposed based on behavioral incidents occurring on October 13, 2012, December 18, 2012, December 21, 2012, January 10, 2013, and February 4, 2013. (Doc. 24 Ex. A at 3-6.)[2] Attached to Smith's *Martinez* report is an affidavit from Larry Phillips, NMCD Corrections Administrator/Grievance Appeals Coordinator. (Doc. 24 Ex. C at 12.) Phillips attests that

---

[2] These incidents included various instances of abusive words and gestures (minor-level misconduct) and violent threats and battery, including throwing urine on an officer (major-level misconduct). *Id.*

Ahlgrim did not file any grievances or appeals relating to any major or minor misconduct report or behavior contract between October 1, 2012, and February 28, 2013. (*Id.*) Phillips attests that Ahlgrim did file one appeal on an unrelated matter as to his right to "order personal property through institutional canteens and approved vendors." (*Id.*; *see* Doc. 24 Ex. C.1 at 15-24.) Based on the absence of any grievance relating to Ahlgrim's misconduct reports or behavior contract, Smith argues that Ahlgrim has failed to exhaust his administrative remedies as to his Fourteenth Amendment due process claim.

      Since Ahlgrim did not file a response, I turn to his complaint to see if he alleges that he filed any grievances relating to the behavior contract or misconduct reports. He asserts that he filed an unanswered Formal Grievance after he was moved to Housing Unit 1B E108 and that he asked the Grievance Officer about his grievance on February 26, 2013, to no avail. There is no record of Ahlgrim filing such a grievance. However, even if Ahlgrim did submit a Formal Grievance, there is no indication that the grievance described in the complaint had anything to do with the Fourteenth Amendment due process, RLUIPA, or NMRFRA claims he asserted in his complaint. Furthermore, Ahlgrim does not indicate that he exhausted his administrative remedies by fulfilling all three steps of the administrative process—informal grievance, formal grievance, and appeal—or by showing that administrative remedies were unavailable. Accordingly, I find that Smith has shown that Ahlgrim did not exhaust his administrative remedies, and I recommend that the Court dismiss Ahlgrim's Fourteenth Amendment due process claim without prejudice.[3] *See Snyder v. Harris*, 406 F. App'x. 313, 317 (10th Cir. 2011) (unpublished).

---

[3] Because Ahlgrim has failed to exhaust his administrative remedies, it is not necessary to address the defense of qualified immunity or Smith's other arguments. *See Wilson v. Bezona*, No. 10-cv-00756-REB-KLM, 2012 WL 628620, at *2 (D. Colo. Feb. 27, 2012) (unpublished).

## II. RLUIPA Claim

Under RLUIPA, the government must not impose a substantial burden on the religious exercise of an inmate unless the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. *See* 42 U.S.C. § 2000cc-1(a) (2012). The statute applies whenever the substantial burden is applied in a program or activity receiving federal financial assistance or affects interstate commerce. *See* § 2000cc-1(b). RLUIPA permits official-capacity claims but not individual-capacity claims. *Stewart v. Beach*, 701 F.3d 1322, 1334-35 (10th Cir. 2012). In an official-capacity suit, the real party in interest is the government entity rather than the named official, and therefore "the entity's policy or custom must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quotations omitted); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).

Plaintiff holds the initial burden of showing 1) religious exercise that 2) has been substantially burdened by prison policy. *Yellowbear v. Lampert*, 741 F.3d 48, 53 (10th Cir. 2014). That is, the plaintiff must show a "*religious* exercise" from the outset. *Id.* "Religious exercise" is defined as "includ[ing] any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). The exercise of religion "often involves not only belief and profession but the performance of (or abstention from) physical acts." *Yellowbear*, 741 F.3d at 54. As to the substantial burden requirement, a burden becomes substantial

> when (at the very least) the government (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief—for example, by presenting an illusory or Hobson's choice where

>the only realistically possible course of action available to the plaintiff trenches on sincere religious exercise.

*Id.* at 55 (citations omitted); *see, e.g.*, *Peterson v. Lampert*, 499 F. App'x 782, 785-86 (10th Cir. 2012) (unpublished) (failing to state a RLUIPA claim); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312-13 (10th Cir. 2010) (stating a RLUIPA claim).

Smith argues that as to Ahlgrim's official-capacity claim against him, Ahlgrim has failed to allege how any NMCD actions or policies violated his rights under RLUIPA. Smith asserts that Ahlgrim has not pled anything to suggest that NMCD prevented him from religious exercise during Condition A of his behavior contract—the only time during which his religious items were confiscated. Rather, Smith argues that Ahlgrim was able "to engage in meditation and prayer and any other expression incidental to religious observations." Smith also cites to the affidavit of Chaplain Andres Carrillo, who stated that "while [the items confiscated] facilitate religious observance, they are not essential to the practice of the Muslim religion." (*See* Doc. 24 Ex. G at 1).

Upon examining the complaint, I find that Ahlgrim has failed to show that he was either prevented from performing a religious exercise or forced to participate in an activity prohibited by his religious beliefs. While Ahlgrim asserts that various religious items were confiscated from him, he does not show that prison policy substantially burdened the actual exercise of his religion. Construing the facts in the light most favorable to Ahlgrim, Ahlgrim has failed to show a violation of RLUIPA. I therefore recommend that the Court grant summary judgment as to Smith for Ahlgrim's RLUIPA claim and dismiss the claim with prejudice.

### III.     NMRFRA Claim

Under NMRFRA,

> A government agency shall not restrict a person's free exercise of religion unless: A) the restriction is in the form of a rule of general applicability and does not directly discriminate against religion or among religions; and B) the application of the restriction to the person is essential to further a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.

N.M. STAT. ANN. § 28-22-3 (2013). That is, "[n]othing in the New Mexico Religious Freedom Restoration Act authorizes a government agency to burden a person's free exercise of religion." *Id.* § 28-22-5. The statute waives immunity for government agencies and their employees for violations of a person's free exercise of religion. *Id.* § 28-22-4.

NMRFRA defines "free exercise of religion" as "an act or a refusal to act that is substantially motivated by religious belief." *Id.* § 28-22-4(A). "Government agency" is defined as "the state or any of its political subdivisions, institutions, departments, agencies, commissions, committees, boards, councils, bureaus or authorities." *Id.* § 28-22-4(B). Because NMRFRA differs from the federal Religious Freedom Restoration Act, I may not use the federal statute for guidance. *State v. Bent*, -- P.3d --, 2013 WL 4517161, at *9 (N.M. Ct. App. Aug. 26, 2013).

Smith points out that, as under RLUIPA, the statute applies only to official-capacity and not to individual-capacity claims. Smith argues that although Ahlgrim's religious items were confiscated, this was merely a byproduct of enforcement, and there was no violation of a fundamental tenet of Ahlgrim's religion. Smith also asserts that Ahlgrims has failed to allege that NMCD policies burdened the practice of his religion.

Case law interpreting NMRFRA is minimal. Nonetheless, the Tenth Circuit has emphasized whether the government prevented an "act" or "refusal to act" based on religious beliefs. The Tenth Circuit affirmed the district court's granting of summary judgment against the

representative of a decedent alleging a violation of NMRFRA for the performance of an autopsy in violation of the decedent's religious beliefs, finding that "the decedent did not act or refuse to act before his death." *Ross v. Bd. of Regents*, 599 F.3d 1114, 1118 (10th Cir. 2010).

Ahlgrim has not shown that he was prevented from performing an act or refusal to act in violation of his religious beliefs, thus failing to address whether he could freely exercise his religion—the essence of NMRFRA. Construing the facts in the light most favorable to Ahlgrim, Ahlgrim has failed to show a violation of NMRFRA. I therefore recommend that the Court grant summary judgment as to Smith for Ahlgrim's NMRFRA claim and dismiss the claim with prejudice.

## CONCLUSION

Ahlgrim failed to exhaust his administrative remedies as to his Fourteenth Amendment due process claim, and I therefore recommend that the Court dismiss this claim without prejudice. In addition, Ahlgrim failed to show a violation of either RLUIPA or NMRFRA. I recommend that the Court grant summary judgment as to Smith for Ahlgrim's RLUIPA and NMRFRA claims and dismiss both with prejudice.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.